**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **NATHAN BILLER, INDIVIDUALLY AND ALL OTHERS SIMILARLY SITUATED,** | |
| ***Plaintiff*,** | **Civil Action No. 4:16-cv-0043** |
| **v.** | |
| **RMCN CREDIT SERVICES, INC., DOUGLAS PARKER, and JULIE PARKER,** | |
| ***Defendants*.** | **JURY DEMANDED**<br>**FLSA COLLECTIVE ACTION** |

**PLAINTIFF'S FIRST STAGE MOTION FOR NOTICE TO POTENTIAL PLAINTIFFS AND CONDITIONAL CERTIFICATION**

Named Plaintiff, Nathan Biller, on behalf of himself and all others similarly situated, and the Early Opt-In Plaintiffs (collectively, "Plaintiffs") present this Motion for Notice to Potential Plaintiffs and Conditional Certification (the "Motion"), and show as follows:

## I. OVERVIEW

This is **not** a motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Rather, this Motion is brought pursuant to the collective action provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Under this statute and the case law interpreting it, individuals may bring "collective actions" on behalf of themselves and on behalf of those "similarly situated." However, in sharp contrast to Rule 23 class cases, FLSA collective actions under this statute are **opt-in** rather than opt-out. Thus, the standards applicable to a request for Notice to similarly situated individuals are "lenient" and plaintiffs are only required to show that

similarly situated individuals exist. This is a follow-up case from *Smith et al v. RMCN Credit Services, Inc. et al*, Case No. 4:13-cv-00730 ("*Smith*"), which is also pending in this District and concerns Defendants' labor practices concerning their commission-paid employees. This Court already granted the very same relief sought here in *Smith*, Dkt. #45, finding that Defendants enforce a common set of pay practices for their commission-paid employees. This case, is brought on behalf of Defendants' hourly-paid employees, each of whom were, again, subject to similar overtime requirements, worked out of the same single facility as the workers in *Smith* where they had the opportunity to witness each other regularly working overtime, and concerns the same mismanagement.

At this early stage of the case, numerous individuals have already self-selected as similar to the Named Plaintiff and elected to join this suit (the "Early Opt-In Plaintiffs"), but there are other individuals who may not be aware of this suit or of their rights to proceed in this forum. A Notice to Potential Plaintiffs will allow a limited group of current and former Repair My Credit Now employees to make an informed decision as to whether to participate along with these initial Plaintiffs. A proposed form of the Notice is attached to this motion as **Exhibit A**. The proposed Consent Form is attached as **Exhibit B**.

Plaintiffs sued the above-named Defendants (collectively, "Defendants" or "Repair My Credit Now") to recover unpaid wages that were not paid in accordance with the FLSA. Along with this Motion, Plaintiffs have submitted <u>four declarations</u> from former Repair My Credit Now employees who worked for Defendants throughout the recoverable period concerning the illegal payment scheme. **Exhibits C–F**. As the Declarations demonstrate, Defendants failed to compensate their hourly-paid employees for all the hours they actually worked. *Id.* ¶ 6. Defendants expected employees to arrive at the jobsite before their scheduled start time in order to perform

certain integral and indispensable job tasks, such as booting up and logging on/into computers. *See generally*, Complaint. These and other pre-shift tasks and expectations required that employees begin their work before they were permitted to clock-in and receive compensation for that work. **Exhibits C–F** ¶¶ 3–4. If they did not arrive early and instead commenced pre-shift work at the regularly scheduled start time, they would be considered late and subject to discipline. *Id.* ¶ 3. Nevertheless, while Defendants expected and essentially required this work, employees were not permitted to log time spent on these pre-shift tasks. *Id.* Because employees were regularly scheduled to work and regularly worked 40 hours per week, this pre-shift work amounts to Defendants requiring employees to perform uncompensated overtime hours. *Id*. ¶ 4.

A group of similarly situated employees exists in that these hourly-paid employees were subject to the same pay provisions and practices as Named Plaintiff and the Three Early Opt-In Plaintiffs who have already joined this matter as of this filing. Consequently, these individuals should be notified of this action and their right to participate if they so desire.

Although Plaintiffs will be able to establish Defendants' failure to pay overtime at trial, **the merits of the case are not at issue in this Motion**. As set forth herein, because Plaintiffs readily meet the **lenient** burden applicable at this stage, conditional certification and Notice to the Potential Plaintiffs is appropriate.

## II. FACTUAL BACKGROUND

### A. Plaintiffs are Similarly Situated to Defendants' Other Hourly-Paid Workers.

The attached Declarations demonstrate that a group of similarly situated employees exist that are subject to Defendants' improper pay practice of requiring pre-shift and "off-the-clock" work without allowing workers to clock in, resulting in Defendants not compensating these workers with overtime pay for overtime worked. **Exhibits C–F.** The Declarations are from four

hourly-paid workers who were subjected to the same illegal payment scheme that forms the basis of Plaintiff's claims. *Id.*

Defendants operate a credit repair and restoration company founded and directed by Defendants Douglas Parker and Julie Parker ("Parkers"). During their employment, Plaintiffs were commonly classified as hourly-paid, non-exempt workers by Defendants. Despite this knowledge that Plaintiffs were all overtime eligible, Plaintiffs routinely worked in excess of 40 hours per week during one or more weeks in the applicable period without proper overtime pay**.** *See e.g., id*. ¶ 4. Defendants and a number of additional managers[1] controlled Plaintiffs' regular schedule, were aware of the pre-shift and unpaid work performed by their employees, and were ultimately responsible for the pay structure and system that failed to provide lawful wages. *Id.* ¶ 5 (reflecting that Defendants controlled employees' required schedule, had the power to discipline employees, and were ultimately responsible for the pay structure and system that encouraged their excessive overtime but failed to ensure that Plaintiffs and Potential Plaintiffs were paid lawful wages).

**B. <u>Similarly Situated Potential Opt-in Plaintiffs Exist</u>**

Along with this Motion, Plaintiffs have submitted four sworn declarations from former hourly-paid workers that show their similarities: Defendants required Plaintiffs' and their coworkers, the Potential Plaintiffs, to perform pre-shift work without compensating them for this time. *Id.* ¶ 6. The declarations demonstrate and sufficiently allege that Repair My Credit Now's required pre-shift work without compensation was not the result of an individualized determination or situation.

While working at Repair My Credit Now, Plaintiffs got to know many of their co-workers and would witness or discuss their hours worked and pay arrangements. *Id*. Plaintiffs talked with

[1] Who, based on the initial evidence in Plaintiffs' declarations, are likely liable as Individual Defendants and may be added as Parties to this matter as it progresses.

their co-workers about their work habits and how they were paid. *Id*. Plaintiffs are also aware of other employees who would join this case if those individuals were made aware of it. *Id*. Some have identified, by name, individuals who would be interested in participating in this case, have expressed such an interest, or are already doing so. *See generally*, *id.* (identifying yet more Potential Plaintiffs specifically by name and alleging that there are still many more who do not yet know about this case); *see e.g.*, *id.* ¶ 7 (estimating that as many as 50 other hourly-paid workers may be eligible to join this case).

Plaintiffs have met their lenient first stage burden and the Motion should be granted, just as it previously was in *Smith*.

## III. REQUEST FOR CONDITIONAL CERTIFICATION AND § 216(B) NOTICE TO POTENTIAL PLAINTIFFS

The purpose of this Motion is to seek conditional certification and supervised notice to a group of "Potential Plaintiffs" including Defendants' current and former employees who were paid on an hourly basis and who worked from [3 years prior to date of Order] to the present. Plaintiffs have met the lenient standards for Notice to be issued to Potential Plaintiffs.

### A. Collective Actions Are Favored Under the Law and the Court is Authorized to Issue Notice to the Potential Opt-in Plaintiffs.

An employee alleging violations of the FLSA may bring an action on behalf of all "other similarly situated employees." 29 U.S.C. §216(b). Thus, "Congress has stated its policy that [FLSA] Plaintiffs should have the opportunity to proceed collectively." *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Such collective actions are favored under the law because they benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact," and provide Plaintiffs with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Id*. at 170.

Unlike a Rule 23 class action, Plaintiffs in an action under the FLSA must affirmatively opt-in to be covered by the suit. 29 U.S.C. §216(b); *Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001). If an individual employee does not opt-in by filing a written consent, he or she will not be bound by the outcome, whether or not it is favorable, and may bring a subsequent private action. *Equal Employment Opportunity Comm'n v. Pan Am World Airways, Inc*, 897 F.2d 1499, 1508 n.11 (9th Cir. 1990).

Because the substantial benefits of FLSA collective actions "depend on employees receiving accurate and timely Notice concerning the pendency of the collective action," the FLSA grants the Court authority to manage the process of joining such employees in the action, including the power to authorize Notice and monitor preparation and distribution of the Notice. *Hoffmann-La Roche*, 493 U.S. at 169–73 ("The broad remedial goal of the statute should be enforced to the full extent of its terms."). "Court authorization of Notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff date to expedite disposition of the action." *Id.* at 172; *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 628 (D. Colo. 2002) (conditional certification for Notice purposes was appropriate where Plaintiffs had made "substantial allegations" and conditional certification would allow "significant economies" to be achieved). The Court is empowered and encouraged to issue Notice to Potential Plaintiffs and should do so in this case.

**B. <u>The Two-Stage Certification Process.</u>**

As the Fifth Circuit recently noted, the two step approach is the typical manner in which collective actions proceed. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008). District Judge Schell and other courts in the Eastern District of Texas have recognized and applied the two-stage approach to FLSA collective actions. *Tice v. AOC Senior Home Health Corp.*, 2011 WL 4591945 (E.D. Tex. Sept. 30, 2011); *Cripe v. Denison Glass & Mirror, Inc.*, 2012

WL 947455 (E.D. Tex. Jan. 27, 2012) *report and recommendation adopted*, 2012 WL 947362 (E.D. Tex. Mar. 20, 2012); *Sedtal v. Genuine Parts Co.*, 2009 WL 2216593, *2 (E.D. Tex. 2009); *Beall v. Tyler Technologies, Inc.*, 2009 WL 1766141 (E.D. Tex. 2009); *Mims v. Carrier Corp.*, 2008 WL 906335 (E.D. Tex. 2008). In *Tice,* Judge Schell permitted court-approved, companywide notice to a group of over 700 nurses and succinctly stated the two stage process as follows:

> Under the *Lusardi* approach, certification for a collective action under § 216(b) is divided into two stages: (1) the notice stage; and (2) the merits stage. *Mooney,* 54 F.3d at 1213–14. In the notice stage, a district court makes a decision, based on the pleadings and any affidavits, whether to "conditionally" certify the collective action and authorize notice to potential class members. *Id.* The certification at this stage is only "conditional" because the court may later choose, under the merits stage, to "decertify" the collective action upon a showing that the case lacks merit for collective action, i.e. the plaintiffs are not "similarly situated" under § 216(b). *Id.* at 1214. The merits stage typically occurs after discovery is mostly complete and upon motion by the defendant. *Id.*

*Tice v. AOC Senior Home Health Corp.*, 2011 WL 4591945 at *4 (E.D. Tex. Sept. 30, 2011).

Under the two-stage approach, once the court makes the preliminary determination that the potential plaintiffs are similarly situated, the case proceeds as a collective action throughout discovery. *Mooney*, 54 F.3d at 1214. This Court should follow its prior precedent and use the two-stage approach in this case. Discovery is relevant thereafter both as to the merits of the case and for the second step in the collective action procedure where the court evaluates conflicting evidence developed in discovery to test the validity of the preliminary decision made at the notice stage. *Id.* Allowing early notice and full participation by the opt-ins, "assures that the full 'similarly situated' decision is informed, efficiently reached, and conclusive." *Sperling v. Hoffmann-LaRoche Inc.*, 118 F.R.D. 392, 406 (D. N.J.), *aff'd*, 862 F.2d 439 (3d Cir. 1988), *aff'd*, 493 U.S. 165 (1989). Once the notice and opt in period is complete, the Court will have the benefit of knowing the actual makeup of the collective action. *Clarke v. Convergys Cust. Manag. Group.*, 370 F. Supp. 2d 601, 605 (S.D. Tex. 2005) (notice informs the original parties and the court of the

number and identity of persons desiring to participate in the suit). Thus, early notice will help the court to manage the case because it can "ascertain the contours of the action at the outset." *Hoffman-La Roche*, 493 U.S. at 172-73.

### C. Plaintiffs are Entitled to Notice Based on a Minimal Showing that they are Similarly Situated to Other Employees.

#### 1. The Standard for Notice is a "Lenient" One.

Because the first step takes place prior to the completion of discovery, the standard for Notice "is a lenient one." *Mooney*, 54 F.3d at 1214; *See Bernal v. Vankar Enterprises, Inc.*, No. SA-07-CA-695-XR, 2008 WL 791963, at *4 (W.D. Tex. Mar. 24, 2008) ("[t]he decision to conditionally certify a class at the Notice stage is lenient"). Texas courts have routinely recognized and applied this lenient standard in certifying collective actions and issuing Notice to potential Plaintiffs in cases handled by this Plaintiff's counsel. *Halton-Hurt v. The TJX Companies, Inc.*, No. 3:09-cv-2171 (recognizing the lenient standard at the conditional certification stage); *see also McDonald v. WorldPac Inc.*, No. 3:13-cv-04965-K, (N.D. Tex. September 8, 2015); *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820 (N.D. Tex. 2007); *Aguilar v. Complete Landsculpture, Inc.*, No. CIV.A.3:04 CV 0776 D, 2004 WL 2293842, at *1 (N.D. Tex. Oct. 7, 2004); *Barnett*, 2002 WL 1023161, at *2; *Barrera v. MTC, Inc.*, 2011 U.S. Dist. LEXIS 20589, at *3 (W.D. Tex. Mar. 21, 2011).

To impose a strict standard of proof at the Notice stage would unnecessarily hinder the development of collective actions and would undermine the "broad remedial goals" of the FLSA. *Garner v. G.D. Searle*, 802 F. Supp. 418, 422 (M.D. Ala. 1991); *Sperling*, 118 F.R.D. at 407 ("[N]otice to absent class members need not await a conclusive finding of 'similar situations.'"). Only at the **second stage**, at the close of discovery, does the Court make a "factual determination" as to whether the class members are similarly situated. *Mooney*, 54 F.3d at 1214; *Barrera*, 2011

U.S. Dist. LEXIS 20589, at *4. The lenient standard applicable at the first stage "typically results in 'conditional certification' of a representative class," to whom Notice is sent and who receive an opportunity to "opt in." *Mooney*, 54 F.3d at 1214.

**2. Plaintiff Need Only Make Substantial Allegations Supported by Sworn Statements at the Notice Stage.**

At the first stage of the two-stage certification approach, the Court determines whether named Plaintiffs and potential opt-ins are "similarly situated" based upon the allegations in a complaint supported by sworn statements.[2] *Mooney*, 54 F.3d at 1213-14; *see also, Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996), *cert. denied*, 117 S. Ct. 435 (1996); *Brooks v. Bellsouth Telecom.*, 164 F.R.D. 561, 568 (N.D. Ala. 1995); *Sperling*, 118 F.R.D. at 406-07. The record need only be "sufficiently developed . . . to allow court-facilitated Notice" based upon "substantial allegations" *Garner*, 802 F. Supp. at 422; *Sperling*, 118 F.R.D. at 407*; see also Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294 (N.D. Cal. 1991), or "some factual support." *Belcher v. Shoney's Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996).

In the present case, Plaintiff's Complaint alleges that Plaintiff, a former hourly-paid employee of Defendants, worked in excess of forty hours per week while employed by Defendants, but was not properly paid overtime for all of his overtime hours. *See generally*, Complaint, Dkt.

---

[2] *See, e.g.*, *Bernal*, 2008 WL 791963, at *4 (noting that "at least one" of the opt-in Plaintiffs submitted an affidavit supporting the allegations); *Brown v. Money Tree Mortg. Inc.*, 222 F.R.D. 264, 680 (D. Kan. 2004) (two affidavits); *Williams v. Sprint/United Mgmt Co.*, 222 F.R.D. 483, 487 (D. Kan. 2004) (allegations in complaint were "more than sufficient to support provisional certification"); *Reab*, 214 F.R.D. at 628 (allegations in complaint); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 442-45 (N.D. Ill. 1982) (allegations in complaint sufficient); *Ballaris v Wacker Silttronic Corp.*, 2001 U.S. Dist. LEXIS 13354 at *3-5 (D. Ore. Aug. 24, 2001) (two affidavits); *De Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001) (four affidavits); *Camper v. Home Quality Mgmt, Inc.*, 200 F.R.D. 516, 519-21 (D. Md. 2000) (sworn testimony from two deponents and two declarations); *Zhao v. Benihana*, 2001 U.S. Dist. LEXIS 10678 at *12-*13 (S.D. N.Y. 2001) (one affidavit based on plaintiff's "best knowledge"); *Aguayo v. Oldenkamp Trucking*, No. F 04-6279 ASI LJO, 2005 WL 2436477 (E.D. Cal. Oct 3, 2005) (allegations in complaint and declaration of the plaintiff demonstrate plaintiff and other class members are similarly situated); *Alba v. Madden Bolt Corporation*, No. H-02-1503 (S.D. Tex. June 5, 2002)(J. Hoyt) (one affidavit sufficient); *Loreas v. C&S Ranch*, No. L-97-30 (S.D. Tex. May 16, 1997)(J. Kazen) (one affidavit sufficient); *Marchan v. Taqmex, Inc.*, No. H-02-4167 (S.D. Tex. Dec. 17, 2002)(J. Hughes) (one affidavit sufficient); *Schwartz v. MCI Telecom. Corp.*, No. H-98-1574 (S.D. Tex. Feb. 18, 1999)(J. Werlein) (one affidavit sufficient).

No. 1. The Complaint also alleges that other hourly-paid employees were subjected to the same pay provisions in that they were required to perform pre-shift work for which they were not paid, that they were paid under the same pay plan, and that they were not paid at time-and-one-half their regular rates of pay for all hours worked in excess of 40 hours in a workweek. Specifically, Plaintiff and the Class Members were paid on an hourly basis for their assigned shift times, but they were not compensated for all hours of work. *Id*. ¶¶ 14–21. The allegations in the Complaint have already been substantiated by the sworn declarations (pursuant to 28 U.S.C. § 1746) of four individuals. These declarations demonstrate that Plaintiffs worked under the same pay provisions as other individuals who have not yet been notified about the case or fear retaliation. Plaintiffs have easily made the "modest factual showing" necessary for the Court to issue Notice. *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).

**3. Plaintiffs are "Similarly Situated" to the Members of the Proposed Class.**

Plaintiffs are similarly situated to the other Repair My Credit Now employees who were paid on an hourly-basis. "To establish that employees are similarly situated, a Plaintiff must show that they are similarly situated with respect to their job requirements and with regard to their pay provisions. The positions need not be identical, but similar." *Barnett*, 2002 WL 1023161, at *1 (internal quotation marks and brackets omitted) (quoting *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 947 (M.D. Fla.1994)); *see also, Dybach v. State of Fla. Dept. of Corrections.* 942 F.2d 1562, 1567-68 (11th Cir. 1991). "[A]n FLSA class determination is appropriate when there is 'a demonstrated similarity among the individual situations ... some factual nexus which binds the named Plaintiffs and the potential class members together as victims of a particular alleged [policy or practice].'" *Aguilar*, 2004 WL 2293842 at *2 (citing *Crain v. Helmerich and Payne Int'l Drilling*

*Co.,* No. 92-0043, 1992 WL 91946, at *2 (E.D. La. Apr. 16, 1992) (quoting *Heagney v. European Am. Bank,* 122 F.R.D. 125 (E.D.N.Y. 1988))).

Federal courts in Texas have formulated the similarly situated analysis as requiring Plaintiffs to "make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the Plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Maynor v. Dow Chemical, Inc.*, 2008 WL 2220394, at *6 (S.D. Tex., May 28, 2008) (referencing *Prater v. Commerce Equities Mgmt. Co.*, 2007 WL 4146714, at *4 (S.D. Tex. Nov. 19, 2007); *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *5 (S.D. Tex. Jan. 24, 2007). In this case, even though Plaintiffs routinely worked more than 40 hours per week, Plaintiffs were deprived of compensation because Repair My Credit Now required them to perform pre-shift work and prohibited them from recording that time, which resulted in them not being paid for that time.

The "similarly situated" requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder), Rule 42 (severance), or in Rule 23 (class actions). *Grayson*, 79 F.3d at 1096. While evidence of a single decision, policy or plan will meet the similarly situated standard, *Sperling*, 118 F.R.D. at 407, a unified policy, plan, or scheme is not required to satisfy the more liberal "similarly situated" requirement of the FLSA. *Grayson*, 79 F.3d at 1096. Accordingly, "[a] court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Donohue v. Francis Services, Inc.*, No. 04-170, 2004 WL 1161366 (E.D. La. May 24, 2004) (citations omitted). In addition to these factors, some courts making the notice inquiry have sought to determine if there are other individuals <u>who desire to opt</u>

in and who are similarly situated to those bringing the suit. *Dybach*, 942 F.2d at 1567-68. Thus, if other parties join the suit by filing their consents, this is evidence of a desire on the part of others to join the suit that should be considered by the Court.

Where plaintiffs "adequately allege" that the improper practices and "policies are company-wide, . . . notice may be sent company-wide." *White v. MPW Industrial Services, Inc*., 236 F.R.D. 363, 375 (E.D. Tenn. 2006) (rejecting defendant's argument that "notice should be sent only to present and former employees at MPW's branch locations in Chattanooga, Tennessee and Decatur, Alabama, because Plaintiff's proof relates only to those particular branches."); *see also, Masson v. Ecolab, Inc.*, No. 04 Civ. 4488 (MBM), 2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005) (granting companywide notice to preventive maintenance and repair services workers); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197-98 (S.D.N.Y. 2006) (granting company-wide notice to "all carpet installation mechanics"). "The court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated." *Maynor v. Dow Chem. Co., No.* CIV. A. G-07-0504, 2008 WL 2220394, at *7 (S.D. Tex. May 28, 2008)(citing to *Holbrook v. Smith & Hawken, Ltd.,* 246 F.R.D. 103, 106 (D.Conn.2007)).

Plaintiffs in the present matter have met the **lenient** standard of showing that Notice to Potential Plaintiffs is appropriate. The evidence detailed in the Factual Background section of this Motion (and not repeated here at length) makes clear that the Plaintiffs and the Potential Plaintiffs are victims of the same scheme to deprive them of overtime compensation. Factual Background §§A-B *supra*. As Repair My Credit Now hourly-paid employees who, Plaintiffs and the Potential Plaintiffs were required to perform pre-shift job duties and weren't allowed to clock for this time, resulting in them not being compensated for that work. *Id.* Further, since these individuals were already regularly scheduled for and worked in excess of 40 hours per week during the actionable

period, this pre-shift, uncompensated work should have been paid at an overtime rate of one-and-a-half times the employee's regular rate of pay. *Id.* The evidence shows that Plaintiffs and the Potential Plaintiffs were victims of the same improper practices which required unpaid work and deprived them of overtime pay. Consequently, the Court should permit Plaintiffs to send supervised Notice to the Potential Plaintiffs because they are similarly situated.

Although not a statutory requirement, one of the factors some courts consider in the Notice determination is whether or not there are similarly situated individuals who desire to opt-in and who should be given Notice of their right to do so. *See Dybach*, 942 F.2d at 1567-68. The fact that **three** additional individuals have elected to join the case (**in addition to the Named Plaintiffs**) without a Notice evidences this fact. *Id*. Plaintiffs also identify, by name, other individuals who worked under the same conditions and pay provisions, who worked more than 40 hours without overtime pay, and who Plaintiffs believe would join this action if they were made aware of it through supervised Notice. **Exs. C–F** ¶ 6. Because Plaintiffs have demonstrated there are others who desire to opt in to this case and have identified still others who have not yet had the opportunity to do so, Plaintiffs have met their burden to justify Notice to the Potential Plaintiffs.

## IV. RELIEF SOUGHT

To facilitate the Notice process and preserve the rights of those who have not yet opted in, Plaintiffs seek supervised Notice and conditional certification for the Potential Plaintiffs. Plaintiffs ask that the proposed Notice be approved. **Ex. A**. This Notice is based on Notices approved and issued in other cases, though it has been modified for this particular case. Plaintiffs have also submitted a proposed Consent Form to be submitted for those wishing to join this action. **Ex. B**. Plaintiffs seek a limited 45 day opt-in period measured from the date Notice is mailed, though in the Fifth Circuit, courts have authorized from to 90 to even 180 days for notice. *See e.g., Fernandes*

*da Silva v. M2/Royal Constr. of La., LLC,* 2009 WL 3565949, at *6 (E.D. La. Oct.29, 2009) (90 days); *Salinas Rodriguez v. Alphas Servs*., LLC 2005 WL 3557178, at *4 (D. Miss. Dec. 27, 2005) (180 days).

Additionally, Plaintiffs seek an Order requiring Defendants to disclose the names, last known addresses, email addresses, and telephone numbers of the Potential Plaintiffs. Plaintiffs request this information be provided within seven days from the entry of an Order and in usable electronic form to reduce any delays in sending out the Notices. Plaintiffs further request permission to send attached proposed Notice and Consent Forms to the Potential Plaintiffs by traditional and modern electronic means. *Beall v. Tyler Technologies, Inc.*, 2009 WL 3064689, at *1 (E.D. Tex. 2009) (Ward, J.) (court granted class Notice via email and later compelled the employer to produce all email addresses, both personal and work); *see also Davis v. Westgate Planet Hollywood Las Vegas, LLC.*, 2009 WL 102735, at * 15 (D. Nev. Jan. 12, 2009) (court granted circulation of class Notice via both U.S. mail and email); *Davis v. Westgate Planet Hollywood Las Vegas*, LLC, 2009 WL 4019424, *3 (D. Nev. Nov. 19, 2009); *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1128-29 (N.D. Cal. 2009); *Cranney v. Carriage Services, Inc.*, 2008 WL 608639, *5 (D. Nev. Feb. 29, 2008).

Finally, Plaintiffs request that the respective Notice and Consent forms be posted at Defendants' offices in an area readily and routinely available for review by such employees. Posting of the Notice at Defendants' offices is absolutely appropriate and not unduly punitive. *See Whitehorn v Wolfgang's Steakhouse, Inc.*, 2011 WL 420528, at *2 (S.D.N.Y. Feb. 8, 2011) ("Courts routinely approve requests to post Notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail.") (*citing Malloy v. Richard Fleischman & Assocs. Inc.*, 2009 WL 1585979, at *4 (S.D.N.Y. June 3, 2009) (requiring

Defendant to "post the Notice in each workplace where potential collective action members are employed" within ten business days of date of decision)); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 96 (E.D.N.Y. 2010) ("[W]hile Defendants object to the posting of the Notice at their business locations—and request an order prohibiting it—such a practice has been routinely approved in other cases."); *see also, Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. April 19, 2006) (Ordering Notice to be posted at each of Defendant's business locations, noting that Defendant would face "only a small burden in being required to post the Notice", and that "multiple district courts have approved this method of Notice").

Plaintiffs further request any other relief to which they are entitled to under the law.

## V. CONCLUSION

Plaintiffs have presented detailed allegations, and even more detailed sworn statements, and documentary evidence concerning their work with Defendants. Plaintiffs identified an improper scheme that fails to pay overtime compensation to other individuals who perform work similar to Plaintiffs, under the same pay plan as Plaintiffs. Because Plaintiffs have met their burden to show that similarly situated individuals exist who have not been notified about the present suit, the Court should enforce the collective action provisions of the FLSA. Plaintiffs' Motion for Notice and Conditional Certification should be granted and Notice should be given to Potential Plaintiffs in this case.

Respectfully submitted,

s/Jay Forester
**J. DEREK BRAZIEL**
Texas Bar No. 00793380
**J. FORESTER**
Texas Bar No. 24087532
**LEE & BRAZIEL, L.L.P.**
1801 N. Lamar Street, Suite 325
Dallas, Texas 75202

(214) 749-1400 phone
(214) 749-1010 fax
www.overtimelawyer.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF CONFERENCE

Plaintiff's counsel conferred with counsel for Defendants in an effort to resolve the issue presented in this Motion. Defendants' counsel advised that they are opposed to the relief sought in this Motion. Therefore, this Motion is presented to the Court for a determination.

s/J. Forester____________________
**J. FORESTER**

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of December, 2016, a copy of the foregoing document was sent to opposing counsel via electronic filing.

s/J. Forester____________________
**J. FORESTER**