IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| NATHAN BILLER, INDIVIDUALLY AND ALL OTHERS SIMILARLY SITUATED;<br><br>Plaintiff,<br><br>v.<br><br>RMCN CREDIT SERVICES, INC., DOUGLAS PARKER, JULIE PARKER,<br><br>Defendants. | CIVIL ACTION NO. 4:16-CV-00043-ALM-CAN |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is named Plaintiff's First Stage Motion for Notice to Potential Plaintiffs and Conditional Certification ("Motion") [Dkt. 18]. Plaintiff requests through the Motion that the Court (1) conditionally certify this matter as a collective action; (2) authorize Plaintiff to send notice and consent forms to potential class members; and (3) require Defendants to disclose the contact information of potential plaintiffs so that notice may be timely sent [Dkt. 18]. After reviewing the Motion and all other relevant pleadings, including the Response [Dkt. 22], Reply [Dkt. 29], Defendants' Objections [Dkt. 24], and Plaintiff's Response to Defendants' Objections [Dkt. 28], the Court recommends that Plaintiffs' Motion be granted.

**BACKGROUND**

Named Plaintiff Nathan Biller ("Plaintiff") alleges Defendant RMCN Credit Services (also known as "Repair My Credit Now"), a credit repair company with offices in McKinney, Texas, employed Plaintiff as an "hourly-paid, nonexempt employee" from April 2013 until June 2014 [Dkt. 1]. Plaintiff alleges Julie and Douglas Parker ("Parkers") (collectively with RMCN, "Defendants") are RMCN's founders and directed its business operations during the period

relevant here [Dkt. 1]. Three other hourly-paid employees, Adrian Brito, Johnny Hernandez, and Ruth E. Dickson submitted (collectively with Plaintiff, the "Declarants"), have consented to join this suit and have submitted declarations in support of Plaintiff's claims [Dkt. 1, Exhs. 4-6].

The Declarants assert RMCN required them to work a predetermined, forty-hour week, with shifts beginning at 8:00 a.m. RMCN allegedly would require the Declarants to arrive (approximately fifteen to twenty minutes) early each shift to prepare their workstations and complete other tasks without overtime compensation for the time spent completing such pre-shift tasks [Dkt. 18, Exhs. 3-6]. The Declarants also each aver they know of other RMCN employees who performed the same functions as them and who would have interest in joining the present suit (hereinafter and collectively with Declarants, the "Hourly Employees") [Dkt. 18, Exhs. 3-6]. Each Declarant states he or she worked similar hours as other Hourly Employees and avers Defendants required the Hourly Employees routinely to complete "similar pre-shift work" without logging the time spent on those pre-shift tasks for purposes of overtime compensation [Dkt. 1, Exhs. 3-6].

Plaintiff filed the Original Complaint as a collective action pursuant to 29 U.S.C. § 216(b) against Defendants on January 12, 2016, asserting that Defendants failed to provide overtime compensation to him and other similarly situated Hourly Employees in violation of the FLSA [Dkt. 1]. On December 8, 2016, Plaintiff filed the present Motion [Dkt. 18]. On January 5, 2017, Defendant filed its response in opposition [Dkt. 22]. Additionally, Defendants filed their Objections to Declarations Submitted in Support of Plaintiff's Motion [Dkt. 24] on January 6, 2017, and Plaintiff filed his Response to Defendants' Objections [Dkt. 28] on January 24, 2017. On January 25, 2017, Plaintiff filed a reply in support of its Motion [Dkt. 29].

**LEGAL STANDARD**

The FLSA gives employees the right to bring an action on behalf of themselves, as well as "other employees similarly situated." 29 U.S.C. § 216(b). "Under § 216(b), district courts have the discretionary power to conditionally certify collective actions and authorize notice to potential class members." *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011). While the Fifth Circuit has not specifically addressed the meaning of "similarly situated" in this context, "[t]wo approaches are used by courts to determine whether collective treatment under §216(b) is appropriate: (1) the two-stage class certification set forth in *Lusardi v. Xerox, Corp.*, 118 F.R.D. 351 (D.N.J. 1987); and (2) the 'Spurious Class Action' method outlined in *Shushan v. Univ. of Colorado*, 132 F.R.D. 263 (D. Colo. 1990)." *Cripe v. Denison Glass Mirror, Inc.*, No. 4:11-CV-224, 2012 WL 947455, at *1-2 (E.D. Tex. Jan 27, 2012), *report and recommendation adopted*, 2012 WL 947362 (E.D. Tex. Mar. 20, 2012); *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 809 (S.D. Tex. 2003). "The *Lusardi* two-stage approach is the prevailing standard among federal courts and is the standard most frequently used by this court." *Tice*, 826 F. Supp. 2d at 994 (citation omitted). As such, the Court applies the *Lusardi* approach in this case.

Under *Lusardi*, "certification for a collective action under § 216(b) is divided into two stages: (1) the notice stage; and (2) the merits stage." *Id.* "At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Because the Court has minimal evidence before it at this stage, "the determination is made using a fairly lenient standard requiring nothing more than

substantial allegations that the putative class members were victims of a single decision, policy or plan." *Tice*, 826 F. Supp. 2d at 995. "Notice is appropriate if the court concludes that there is 'some factual nexus which binds the named plaintiffs and potential class members together as victims of a particular alleged [policy or practice].'" *Allen v. McWane, Inc.*, No. 2:06-CV-158, 2006 WL 3246531, at *2 (E.D. Tex. Nov. 7, 2006). Specifically, a plaintiff must show at the notice state (1) that "there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant aspects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit." *Casanova v. Gold's Tex. Holdings Grp., Inc.*, No. SA:13-CV-1161-DEA, 2014 WL 6606573, at *2 (W.D. Tex. Nov. 19, 2014). "If the first step [of the *Lusardi* approach] is satisfied, the court conditionally certifies a class; and the action proceeds as a collective action during discovery." *Sedtal v. Genuine Parts Co.*, No. 1:08-CV-413-TH, 2009 WL 2216593, at *3 (E.D. Tex. July 23, 2009).

## ANALYSIS

### A. *Defendants' Objections*

Plaintiff submits four declarations in support of the Motion [Dkt. 1, Exhs. 3-6]. Defendants contend these declarations contain "vague and conclusory" and "speculative" averments, that the Declarants "presuppose facts[,]" state "legal conclusion[s,]" and make statements that "lack foundation" and/or "are based upon impermissible hearsay" [Dkt. 24]. Defendants cite no authority in support of the Objections [*see* Dkt. 24]. Plaintiff argues Defendants' failure to support these objections with any legal standard and/or to move formally to strike the declarations should alone serve as bases for denying the Objections [Dkt. 28]. Plaintiff also references numerous

decisions within the Fifth Circuit and Eastern District of Texas permitting the very sort of declarations submitted in support of the Motion in the present case.

While the Fifth Circuit has not specifically addressed the issue of whether the rule against hearsay in Federal Rule of Evidence 802 should apply to declarations submitted in support of an FLSA conditional certification motion, courts within the circuit have permitted consideration, at the notice stage, of declarations challenged on the basis that they would be inadmissible at trial. *Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 760-61 (N.D. Tex. 2013) (collecting cases); *see also Miranda v. Mahard Egg Farm, Inc.*, No. 4:15-cv-406, 2016 WL 1704861, at *2 (E.D. Tex. Apr. 28, 2016) (Mazzant, J.). As such, the Court overrules Defendants' objections to the extent Defendants argue the declarations would be inadmissible at trial.

Defendants also object that the Declarants do not base their averments on personal knowledge and/or that the averments lack foundation; the Court overrules these objections. A declarant's "[p]ersonal knowledge" includes inferences and opinions "so long as [those opinions] are grounded in personal observation and experience." *United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999) (internal quotations omitted). Further, courts permit an employee's (or former employee's) reasonable inferences concerning the employer's policies or general work environment based upon the employee's tenure with the employer. *See Lee*, 980 F. Supp. 2d at 764. Here, each of the Declarants assert their familiarity "with the policies and procedures concerning timekeeping" at RMCN and aver this knowledge is "based on [his or her] work experience and training with the company" [Dkt. 1, Exhs. 3-6]. Plaintiff also avers that, while working with RMCN, "[he] got to know many of [his] co-workers, observed their work habits, and spoke to them about their pay" [Dkt. 1, Exh. 3]. Each of the other Declarants aver the same [Dkt. 1, Exhs. 4-6]. All Declarants assert RMCN required them to complete similar pre-shift tasks

regularly [Dkt. 1, Exhs. 3-6]. The Declarants accordingly provide sufficient information to show their averments are made from personal knowledge and to demonstrate a foundation for those averments. *See Miranda*, 2016 WL 1704861, at *2.

The Court finds that the declarations [Dkt. 1, Exhs. 3-6] have adequate bases in the Declarants' respective personal knowledge and that the declarations are not at this stage subject to the rule against hearsay. Accordingly, the Court overrules Defendants' Objections.

### B. *Conditional Certification*

This case is in the first stage under *Lusardi*. At this stage, "Plaintiff bears the burden of presenting preliminary facts to show that there is a similarly situated group of potential plaintiffs." *Cripe*, 2012 WL 947455, at *2. This does not mean that the purported plaintiffs' positions must be identical to Plaintiff's, as "[t]he court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated [under § 216(b)]." *Tice*, 826 F. Supp. 2d at 996 (internal quotations omitted). Rather, "the relevant inquiry is whether the potential class members performed the same basic tasks and were subject to the same pay practices." *Id.* "[Plaintiffs] need only show that their positions are similar to the potential plaintiffs." *Id.* at 995.

Defendants argue that the Declarants' assertions do not suffice to demonstrate that the Hourly Employees are similarly situated because the declarations provide insufficient specifics about the tasks these employees performed, show that the Declarants worked during different time periods and/or under different supervisors, and fail to demonstrate a widespread, discriminatory plan aimed at the Hourly Employees [Dkt. 22 at 8-10]. Defendants further argue the individualized evaluations needed to make such determinations do not comport with the FLSA's collective action procedures [Dkt. 22 at 4-5]. Additionally, Defendants contend Plaintiff does not show other

Hourly Employees will consent to join this lawsuit and that Plaintiff presents no evidence of willful violation of the FLSA on Defendants' part [Dkt. 22 at 10-11].

Plaintiff argues in response that the declarations suffice to show the Hourly Employees are similarly situated, particularly under the "lenient" first stage conditional certification standard [Dkt. 29 at 5-8]. Plaintiff asserts the declarations show the Hourly Employees each are "nonexempt" hourly workers under Defendants' classification scheme "who each worked at the same and singular facility operated by Defendants . . ." [Dkt. 22 at 6-7]. Further, Plaintiff contends, the declarations show Defendants required each of the Hourly Employees to complete similar pre-shift activities without proper compensation and that other Hourly Employees, such as Adrian Brito, Johnny Hernandez, and Ruth E. Dickson, exist who would consent to join this lawsuit [Dkt. 22 at 7-8]. Plaintiff asserts, as well, that courts make the determination whether Defendants acted willfully to violate the FLSA at the second stage of the litigation [Dkt. 28 at 9].

In the present case, Plaintiff carries the light burden at the first stage of demonstrating the Hourly Employees are similarly situated for purposes of first stage certification, that other Hourly Employees exist who are interested in opting in to this lawsuit, and that a reasonable basis for crediting the Declarants' assertions exists. Despite that Plaintiff provides the Court with no information about the Hourly Employees' job titles, Plaintiff alleges and presents declarations showing RMCN compensated each of the Declarants on an hourly basis, that RMCN regularly required each Declarant to perform similar pre-shift activities and/or to work hours in excess of the standard forty per week without overtime compensation, and further that the Declarants observed other Hourly Employees performing the same types of required pre-shift activities they were required to perform [Dkt. 1 at 3-4; Dkt. 18, Exhs. 3-6]. Defendants proffer only the general averment that the Declarants "worked in different capacities and had different job responsibilities"

[Dkt. 22, Exh. 1 at 3] to combat Plaintiff's allegations that Defendants required the Hourly Employees consistently to arrive fifteen to twenty minutes early for work in order "to perform certain integral and indispensable tasks, such as booting up and logging on/into computers" [Dkt. 1 at 4]. Moreover, Defendants admit [Dkt. 10 at 2] that the Hourly Employees were (or are), in fact, paid hourly, as the Declarants aver [Dkt. 18, Exhs. 3-6]. Plaintiff also alleges these practices occurred at "Defendants' single office location" where all Hourly Employees were employed, which necessarily implies Defendants subjected each Hourly Employee to the same policy of completing "similar pre-shift work" [Dkt. 1 at 3]. *See Tice*, 826 F. Supp. 2d at 995 (noting courts merely require "substantial allegations that the putative class members were victims of a single decision, policy or plan" at the first *Lusardi* stage and that "the court should satisfy itself that the potential plaintiffs are similarly situated with respect to their job requirements and pay provisions"). And Plaintiff shows through the declarations that other Hourly Employees will consent to join or already have consented to join this suit [Dkt. 18, Exhs. 3-6]. Plaintiff specifically identifies three other Hourly Employees whom he believes would have interest in opting in to the case [Dkt. 18, Exh. 3]; these three Hourly Employees have in turn submitted declarations specifically identifying even other Hourly Employees who might also have an interest in joining the lawsuit [Dkt. 18, Exhs. 4-6]. *See Miranda*, 2016 WL 1704861, at *3 (noting "that several plaintiffs other than [those named] have already joined" and finding that, as a result, plaintiffs had shown other potential plaintiffs existed who had an interest in joining the suit). Plaintiff has demonstrated through these allegations and averments that the circumstances of which Plaintiff complains are not "purely personal to . . . [P]laintiff," and that Defendants had a policy "generally applicable" to the Hourly Employees of requiring performance of similar pre-shift activities. *See Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (noting a court "may deny a

plaintiff's right to proceed collectively only if" the plaintiff shows "purely personal" circumstances resulted in plaintiff's complained-of harm). Furthermore, the declarations show that all of the Declarants worked together for at least some period of time [Dkt. 18, Exhs. 3-6]. Defendants' proffered affidavit also shows each of Declarants' respective tenures with Defendants overlapped to some extent [Dkt. 22, Exh. 1 at 3]. Accordingly, the Court finds Plaintiff meets the low burden required for conditional certification at the first stage of this litigation.

Regarding Defendants' contention that the Court will need to make individualized determinations about whether the Hourly Employees are similarly situated, the Court notes that, where courts find "a particular need to address each perspective member of the collective action as an individual[,]" courts generally do so at "the second stage" of the litigation. *Miranda*, 2016 WL 1704861, at *3. Indeed, at the second stage, a court must "make[] another factual determination about whether there are similarly situated employees"—the court then reevaluates the first stage certification and may decertify the class and dismiss the opt-in plaintiffs without prejudice. *Sedtal*, 2009 WL 2216593, at *3 (citing *H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999)). Accordingly, the Court finds Defendants concerns in this regard premature.

The Court also finds premature Defendants' argument that Plaintiff has not established Defendants willfully violated the FLSA. Courts reserve any determination regarding whether a defendant willfully has violated the FLSA for the second stage of litigation, as such question goes to the merits of Plaintiff's case. *See* Dkt. 45 in Eastern District of Texas Case No. 4:13-cv-730. Courts do so because the second stage "typically [is] precipitated by a motion for 'decertification' by the defendant," which is "usually filed after discovery is largely complete," and the court has before it sufficient evidence to make such determinations. *See Mooney*, 54 F.3d at 1214. Given that Defendants concerns here are better addressed at the second stage of this litigation and that

Plaintiff has demonstrated the requirements for first-stage collective action certification are met, the Court finds Plaintiff's Motion should be granted.

## CONCLUSION

In light of the foregoing, the Court finds Plaintiff has fulfilled the requirements for collective action certification and that notice should issue. Accordingly, the Court **RECOMMENDS** that Plaintiff's First Stage Motion for Notice to Potential Plaintiffs and Conditional Certification [Dkt. 18] be **GRANTED**. Further, the Court **RECOMMENDS** that the Court conditionally certify a class of Defendants' current and former employees who were paid on an hourly basis and who worked from the date three years prior to the Court's order to the date of the Court's order.

The Court **ORDERS** the parties to confer and submit a draft of the proposed notice within twenty days for the Court's approval. Any issues the parties cannot agree upon should be submitted to the Court for consideration.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that

such consequences will result from a failure to object. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 3rd day of April, 2017.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE